GRUND *v.* FIRST NATIONAL BANK OF PETOSKEY.

EQUITY—PLEADING—TRUST—ACCOUNTING.

Averments in a bill of complaint against a bank and its president alleging that they were complainant's agents and trustees, that the facts are peculiarly within the knowledge of defendants, that discovery is necessary to complainant, that defendants were guilty of positive fraud, and that the interests and liabilities of defendants are so identical as to be inseparable, state a case cognizable by a court of equity.

Appeal from Charlevoix; Mayne, J. Submitted October 6, 1916. (Docket No. 70.) Decided December 22, 1916.

Bill by William Grund against the First National Bank of Petoskey and Chalmers Curtis for an accounting. From an order overruling a motion to dismiss, defendants appeal. Affirmed.

*Mesick & Miller,* for complainant.

*Halstead & Halstead* for defendants.

MOORE, J. This is an appeal from an order of the circuit court for the county of Charlevoix, in chancery, overruling defendants' motion to dismiss the bill of complaint; leave to appeal having been first obtained.

The bill of complaint was filed January 17, 1916. The separate answers of defendants were filed February 1, 1916. Each answer contained a motion to dismiss the bill of complaint under section 4 of chapter 14 of the judicature act (Act No. 314, Pub. Acts 1915 [3 Comp. Laws 1915, § 12456]). In disposing of the motion the court said he thought it advisable to hold the case for a decision on the merits after hearing the testimony. The motion to dismiss was brought on for determination in advance of the hearing of the cause, under the provisions of said judicature act, on notice given by each of the parties to the suit, and was overruled by the circuit judge after argument.

It is claimed: (1) There is no equity in the bill; (2) there is an adequate remedy at law. These claims make it necessary to know some of the averments of the bill, which are as follows:

"* *     That the said defendant Chalmers Curtis now is, and has been since prior to the year 1908, a resident of the county of Emmet; that during the years 1908 and 1909 he was a director of and vice president and cashier of the defendant the First National Bank of Petoskey; that at the time of the filing of this bill he is president of said bank; that during all the time since prior to the year 1908 and up to and including the time of filing this bill said Curtis has been a di-

rector of said bank, and has held either the office of
vice president and cashier or that of president during
all that period.

"(4) In the fall of the year 1908 said William Grund
desired to purchase the following described lands with
the saw timber standing and growing thereon:  *   *
*   Said Grund having been informed that title to said
lands and timber could be acquired through one Roy A.
French, of Pittsburgh, Pa., for the sum of $3,500, he
then went to said Curtis for the purpose of securing
the money with which to make such purchase.

"(5) After some negotiations between plaintiff and
Chalmers Curtis and on, to wit, the 17th day of De-
cember, 1908, William Grund, at the instance of said
Curtis, made and delivered to defendant bank a prom-
issory note for the sum of $3,750, one John Grund
signing the note with him and for his accommodation,
and then and there it was agreed between plaintiff and
said Curtis that the proceeds of said note as paid by
said bank should remain in said bank and be subject
to the order of said Curtis; that said Curtis should
receive the title to said lands and timber in trust for
said plaintiff and to secure the payment of said note
to defendant bank; that upon receipt by Curtis of a
deed or deeds, together with an abstract, showing a
good and merchantable title in fee simple to said lands
and timber, the said Curtis should pay over to said
Roy A. French the sum of $3,500 above mentioned.

"(6) In January or February, 1909, said Curtis as-
sured plaintiff that he had acquired the title to said
lands and timber, and in reliance upon this assurance
plaintiff started to lumber the same.  From time to
time after the last-mentioned date said Curtis assured
plaintiff that he held a good and merchantable title to
said lands and timber, and that he had an abstract
showing such title, in reliance upon which assurances
plaintiff during the winter of 1909 and succeeding
winters took the saw timber from said lands and man-
ufactured the same into lumber."

The bill avers certain conveyances of portions of
said land by Mr. Grund.

"*   *   *   (12) In the last days of December, 1914,
or the first days of January, 1915, plaintiff heard a

rumor that one Currie, an attorney from Midland, Mich., had been in Petoskey claiming to represent certain parties in Pennsylvania who claimed title to some portion of the lands described in paragraph 4 of this bill. As soon as these rumors reached the ears of plaintiff he went at once to Chalmers Curtis for information regarding the same, and was told by said Curtis that the title was good; that Currie was making some kind of a bluff on behalf of the Pennsylvania parties; that Grund was perfectly safe, and had no reason to worry over the rumors or pay any attention to them."

The bill avers:

"That he later learned the title was defective, and has undertaken, as he was obliged to do, to perfect the same; that "he has expended and incurred liabilities necessarily connected with the securing of title to said lands in excess of the sum of $2,500.

"And plaintiff is informed and believes and charges the fact to be that of the proceeds of the note described in paragraph 5 of this bill neither said Curtis nor said bank paid over or caused to be paid over to said Roy A. French any of said money.  *  *  *

"And plaintiff is informed and believes and charges the fact to be that the balance of the proceeds of the note described in paragraph 5 of this bill remains in the hands of said bank or of said Curtis, either or both of them; that it has been converted by them to their own uses and in violation of the rights of this plaintiff; that the facts attending upon the actual disposition of the said moneys are peculiarly within the knowledge of the defendants and without the knowledge of the plaintiff.

"And the plaintiff avers that the facts upon which this cause of action is based were fraudulently concealed from the plaintiff by the said Curtis and the said bank until within one year of the time of filing this, his bill of complaint; that the said Curtis and said bank fraudulently concealed from plaintiff that the title to the lands described in paragraph 4 was defective; that fact that they had never paid over the $3,500 to Roy A. French; and the fact that they had paid out a portion of the proceeds of the said note without any

right, until within a period of one year of the time of filing this bill of complaint."

Complainant prayed for several things, among them:

"(3) That said defendants be required to make a true discovery unto plaintiff touching the disposition of any and all funds which arose out of the proceeds of the $3,750 note described in this bill.

"(4) That the said defendants be required to come to a fair and just account with the plaintiff touching the proceeds of said note.

"(5) That the defendants be required to reimburse plaintiff for any and all sums arising from said note which they have paid out wrongfully and without authority."

Then follows a prayer for general relief.

We have quoted sufficiently from the bill of complaint to show that it is claimed that plaintiff is proceeding against the two defendants in support of a single general right; that defendants have been acting as the agents and trustees of the plaintiff; that the facts are peculiarly within the knowledge of the defendants, and that a discovery is necessary to plaintiff, and that defendants are shown to have been guilty of positive fraud toward plaintiff while they were in a fiduciary relation to him; that the interests and liabilities of the defendants are so identical and inseparable that they cannot properly be heard separately.

The averments of the bill of complaint state a case cognizable by a court of equity. See *Excelsior Wrapper Co.* v. *Yund,* 176 Mich. 372 (142 N. W. 353).

The case is remanded to the trial court for further proceedings, with costs to complainant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.